UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE JUAREZ, <br><br> Plaintiff, <br><br> v. <br><br> PORTFOLIO RECOVERY ASSOCIATES, LLC, <br><br> Defendant. | No. 14 C 5928 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose Juarez ("Plaintiff") filed this action against Defendant Portfolio Recovery Associates, LLC ("Defendant" or "PRA"), a debt collection agency, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA") (Count I) and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq*. ("ICFA") (Count II). Currently before the court is Defendant's motion for summary judgment. For the following reasons, Defendant's motion for summary judgment is granted in part and denied in part.

## I. STATEMENT OF FACTS

Jose Juarez incurred an outstanding debt in an account with General Electric Capital Retail Bank/Care Credit ("GE account") in or around October 22, 2008. The loan went delinquent on December 12, 2008. On June 10, 2009, General Electric Capital Retail Bank charged off this account and, on October 23, 2012, sold the remaining balance of $3,560.74 to PRA, a debt buyer in the practice of purchasing charged-off debts and collecting on outstanding account balances, through a Receivables Purchase Agreement.

On or around November 29, 2012, PRA mailed Jose Juarez an initial debt validation letter regarding the outstanding debt in the GE account. PRA's counsel, on behalf of PRA, sent

1

Juarez a letter, dated March 18, 2013, notifying him that his account had been referred to their office for collection. On or about February 3, 2014, after failing to hear from Juarez either by phone or letter, PRA filed suit against Juarez in the Circuit Court of Cook County, Illinois. Along with PRA's summons and complaint, PRA filed an affidavit executed by Larry J. Andrews, PRA's records custodian, on October 10, 2013. The affidavit stated that the account and all proceeds of the account are now owned by PRA, the Account Assignee, and that the sum of $3,560.74 with respect to the account number ending in "9239" was owed to PRA.

As detailed in the account notes produced by PRA, on or around March 17, 2014 and subsequent to the filing of the complaint and serving of the summons, PRA was "PREPPING FRONTEND SETTING FOR PROVE UP." On March 18, 2014, Juarez appeared in court, and the case was set for trial on June 12, 2014.

Two days later, on March 20, 2014, PRA indicated in its account notes that Juarez's "ACCOUNT DOESN'T MEET WITNESS CRITERIA; WILL ORDER STMTNS AND SEND TO D TO SEE IF THEY CAN HELP SETTLE THE CASE." On March 26, 2014, PRA noted that the "DEBTOR REPRESENTED BY COUNSEL." On April 25, 2014, PRA indicated that it had "RCVED A COUPLE STMNTS DONT SHOW PAYMENTS; WILL CHECK AGAIN BEFORE THE NEXT DATE AND SEE IF ANYTHING." Almost one month later, on May 22, 2014, PRA determined that "NO ADD'L DOCS RCVED, INSUFFICIENT DOCS TO PROVE DEBTM , WILL HAVE TO NON-SUIT ON TRIAL DATE." On June 12, 2014, the date the case was set for trial, PRA moved to dismiss the case without prejudice. The court granted Defendant's motion, consented to by Juarez, and the case was dismissed without prejudice. PRA's records noted, "PREP FRONTEND DISMISSING W/O PREJ NO DOCS."

## II. LEGAL STANDARD

    A.    Summary Judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir.2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir.2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d. 265 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003)(citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir.2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-moving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002).

B.	Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA")

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10). Debt collectors are also prohibited from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, or using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f.

### III. DISCUSSION

A. FDCPA (Count I)

Defendant raises a number of arguments that it contends defeat Plaintiff's FDCPA claim, falling into two categories: (1) Plaintiff cannot prove an FDCPA violation based on any alleged deficiencies in its state court pleadings; and (2) Defendant filed its state court collection claim in good faith. To support its contention that Defendant filed suit in good faith, Defendant points to its employee's affidavit that was submitted in support of its collection complaint and which it claims was based upon his review of trustworthy business records.

As an initial matter, Plaintiff does not dispute the adequacy of the state court pleadings and, in any case, cannot prove an FDCPA violation based upon alleged deficiencies in a state court pleading. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470, 473 (7th Cir.2007)(*Beler*)(holding that pleading requirements are controlled by the state court and that

4

state's rules of procedure, not the FDCPA); *Jenkins v. Centurion Capital Corp.*, No. 07 C 3838, 2009 WL 3414248, at *3 (N.D. Ill. Oct. 20, 2009). Furthermore, Plaintiff neither argues that the mere filing of a suit without the immediate means to prove the claim violates the FDCPA, *Deere v. Javitch, Block & Rathbone LLP*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006) (concluding that "a defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or through discovery" and that a plaintiff is not obligated to have "more of a paper trail" in the lawyers' hands or attached to the complaint), nor that a plaintiff is liable under the FDCPA simply because he ultimately loses his case. *Heintz v. Jenkins*, 514 U.S. 291, 296, 115 S. Ct. 1489, 1491, 131 L. Ed. 2d 395 (1995) (quoting "we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an "action that cannot legally be taken.").

Rather, the crux of Plaintiff's Count I claim under §§ 1692d, e, and f of the FDCPA is that PRA, a debt collector, filed a lawsuit against Plaintiff, a consumer, based on unverifiable information that it could not, and never intended to, substantiate and prove at trial. Plaintiff alleged that PRA, with the intention of harassing and deceiving Juarez into thinking it had legal recourse to the alleged debt, made a material misrepresentation that PRA (1) owned the GE account and (2) could demonstrate the accuracy of the information contained in the complaint. Plaintiff has since abandoned its claim regarding whether Defendant actually owned the Plaintiff's debt as immaterial, but maintains that Defendant made a false representation about its intent and ability to prove its case at trial that is in violation of the FDCPA.

Plaintiff further contends that PRA's suit against Juarez is part of a pattern and practice of filing collection actions against consumers, based on material misrepresentations, without conducting a reasonable investigation into their claims or disclosing their lack of evidence, with

5

the intention of obtaining a default judgment or dismissing the case if challenged. Plaintiff contends that Defendant's conduct as a whole, pursuant to its business model, is specifically designed to coerce consumers into paying alleged debts or to obtain default judgments against consumers who fail to appear in court. This, Plaintiff argues, amounts to an unfair debt collection practice effectuated through the courts that is unfair to the consumer and against public policy. Thus the issue before the court is whether PRA filed its complaint against Juarez in good faith with the belief that it had legal authority to collect on the debt.

    A debt collector that files suit expecting in good faith to prove its claim, even if he does not ultimately prevail, will not be liable under the FDCPA. *Jenkins v. Centurion Capital Corp.*, 2009 WL 3414248 (N.D.Ill. Oct. 20, 2009), while a plaintiff that sues in bad faith may be in violation of the FDCPA. *Williams v. Javitch, Block & Rathbone, LLP,* 480 F.Supp.2d 1016, 1022 (S.D.Ohio 2007). In determining whether a debt collector has filed suit in good faith, courts have distinguished between claims a debt collector merely *chooses* not to prove, *Bandy v. Midland Funding, LLC*, No. CIV.A. 12-00491-KD-C, 2013 WL 210730, at *8 (S.D. Ala. Jan. 18, 2013) (debt collector having a fixed intention not to prove its claim, as demonstrated by having no evidence and deliberately electing not to seek any, and knowing it will lose is not automatically a violation of the FDCPA); *Deere v. Javitch, Block & Rathbone LLP*, 413 F. Supp. 2d 886, 890-91 (S.D. Ohio 2006) (holding that "filing a lawsuit, supported by the client's affidavit attesting to the existence and amount of a debt, is not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable" in violation of § 1692(e)—even if the creditor "intends to dismiss if the defendant debtor requests verification of the original debt" based on the economics of pursuing challenged claims), and claims that a debt collector knows (or should have known) it was incapable of proving at the time the complaint was filed. *Williams,* 480

6

F.Supp.2d 1016, 1022 (S.D.Ohio 2007) (debt collector filed suit in bad faith where it "knew or should have known" that the affidavits supporting the lawsuit were false or that the affiant "lacked personal knowledge" of the matters to which he or she attested); *Kuria v. Palisades Acquisition XVI, LLC,* 752 F.Supp.2d 1293, 1302 (N.D. Ga. 2010) (finding FDCPA claim existed where defendant filed suit that misrepresented the legal status of the debt and the amount owed, and knew that it not only lacked knowledge of the validity of the underlying debt, but also that it never intended to investigate or verify the debt's validity).

A debt collector may make a claim in bad faith, even where a debt is indisputably owed by a debtor and owned by a debt collector, where the debt collector has falsely represented its legal right to collect a debt. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000); *Grant-Hall v. Cavalry Portfolio Serv., LLC*, 856 F.Supp.2d 929, 944 (N.D.Ill. 2012) ("The filing of a legally defective debt collection suit can violate § 1692e where the filing falsely implies that the debt collector has legal recourse to the debt."). In *Gearing*, the court concluded that the defendant's allegation that it was subrogated to the rights of the original payee, when it had not actually been subrogated to its rights, gave a false impression as to the legal status it enjoyed and was a false representation in an attempt to collect a debt, in violation of 15 U.S.C. §§ 1692e(2) and (10). 233 F.3d at 472. The court further found that FDCPA liability may even extend to a debt collector that unintentionally makes a false representation in an attempt to collect a debt. *Id.* (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996)).

As discussed, Plaintiff does not dispute that PRA owned the GE Account or that Plaintiff owes the debt; rather, Plaintiff contends that PRA falsely represented that it had a legal right to collect on the debt. Defendant, relying heavily on *Pantoja v. Portfolio Recovery Associates, LLC*, argues that Plaintiff has failed to establish any evidence that PRA did not have a good faith basis

7

for filing its state court action such that it violated the FDCPA. No. 13-7634, slip op. at p.7 (Mar. 24, 2015). In *Pantoja*, the plaintiff argued that because the PRA "never intended to prove its case" in state court and had no accurate information to assess the validity of the debt, it had perpetrated a fraud on the consumer in violation of the FDCPA. There, the PRA attached a sworn affidavit by an employee of the PRA to support the allegations in the complaint and produced the underlying business records upon which its affiant relied, including a Bill of Sale. The plaintiff questioned the affiant's knowledge and argued that the affidavit contained false statements regarding defendant's record-keeping practices. The court rejected the plaintiff's argument after finding that the plaintiff failed to refute the accuracy of these documents, including by failing to depose the affiant, and that there was no evidence that the PRA falsely represented that it had the legal authority to pursue collection efforts. Based on these findings, Judge Pallmeyer concluded that the PRA did not lack a good-faith basis for pursuing its collection claim in state court and, therefore, did not violate the FDCPA by filing, but later dismissing, its state court action.

Similarly, PRA filed a collection complaint in the Circuit Court of Cook County, on or about February 3, 2014, along with an affidavit, signed by PRA's document custodian, Andrews. Andrews attested that, based on his review of its own business records and records transferred to PRA, the Account Assignee, from GE/Care Credit, the Account Seller, the account "9239" and all of its proceeds, totaling the sum of $3,560.74, were owned by PRA as of October 10, 2013. Andrews further attested that the monthly payments Juarez had agreed to pay to GE/Care Credit related to the purchases charged to the "9239" account were now owed to PRA, the successor in interest of the Subject Account.

Plaintiff points to PRA's April 5, 2013 record entry that, prior to Andrews preparing his affidavit on October 9, 2013, an "Affidavit [was] reviewed [and] rejected by Custodian—BOS

NOT AVAILABLE." This, Plaintiff asserts, suggests that PRA knew at the time it filed its complaint that the bill of sale was "not available" and that without such, it would be very difficult for an assignee to establish its ownership of an account in any court of law. Yet, as in *Pantoja*, Plaintiff failed to depose Andrews and has not established evidence to rebut the accuracy of the underlying business records Andrews relied upon to prepare his affidavit. *Jenkins v. Centurion Capital Corp.*, Case No. 07 C 3838, 2009 WL 3414248, *5 (N.D.Ill. Oct. 20, 2009) (finding that plaintiff failed to meet its burden of showing that the statement in the affidavit was either false or misleading). Moreover, Plaintiff has failed to establish any evidence that demonstrates that, at the time it filed its complaint, PRA did not have and could not obtain sufficient documentation to prove its collection case, even if it would be difficult to do so without a bill of sale. Rather, PRA's own account notes, stating "PREPPING FRONTEND SETTING FOR PROVE UP," indicate that PRA began its efforts to prove its case in good faith.

Unlike in *Pantoja*, however, there came a time when PRA knew that it could not prove its case. By March 20, 2014, PRA had determined that Plaintiff's "ACCOUNT DOESN'T MEET WITNESS CRITERIA." PRA then ordered statements and sent these to Juarez "TO SEE IF THEY CAN HELP SETTLE THE CASE." By April 25, 2014, PRA had received a couple of statements that didn't show any payments and decided to check their records again before the next court date. On May 22, 2014, after almost another month had passed, PRA determined that, having received no additional documents, PRA had "INSUFFICIENT DOCS TO PROVE DEBTM" and concluded that it "WILL HAVE TO NON-SUIT ON TRIAL DATE." Yet, even after determining that it could not prove that it could collect on the debt and would have to dismiss the case, PRA continued the case and let another three weeks pass before finally moving to dismiss the case on June 12, 2014, the date the case was set for trial. On June 12, 2014, the

9

court granted Defendant's motion, consented to by Juarez, to dismiss the case without prejudice. PRA noted in its records that the case "PREP FRONTEND DISMISSING W/O PREJ NO DOCS."

During the period of time in which PRA knew that it did not have sufficient evidence to prove its case, PRA noted two entries in its call register on May 30, 2014 and June 9, 2014. However, there is no evidence that PRA spoke with Juarez or affirmatively made any representations to him about the status of his debt or case. While PRA was not upfront about the status of the state court case and likely hoped that Juarez would make a payment to PRA and settle the case, PRA's silence in the three weeks leading up to dismissal of the collection action on the date of trial cannot be considered a false representation, deception, harassment, or unfair debt collection practice in violation of the FDCPA.

For these reasons, Defendant's motion for summary judgment is granted.

B. ICFA (Count II)

The only basis for federal jurisdiction over Plaintiff's remaining ICFA claims is supplemental jurisdiction. 28 U.S.C. § 1367. While the district court has broad discretion to exercise supplemental jurisdiction "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Products N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (citing *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 727 (7th Cir.2010)); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

Having disposed of Plaintiff's federal FDCPA claims in favor of Defendant, this court declines to exercise supplemental jurisdiction over Plaintiff's state ICFA claims and dismisses Count II in its entirety without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as to Count I and denied as to Count II. Count II is dismissed without prejudice.

ENTER:

James B. Zagel
United States District Judge

DATE: August 12, 2015